UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAMELA G. RUE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14CV1189 ERW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge John M. Bodenhausen [ECF No. 18], pursuant to 28 U.S.C. § 636(b).

## I. PROCEDURAL BACKGROUND

Plaintiff Pamela Rue brought this action pursuant to 42 U.S.C. § 405(g), requesting judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (Commissioner), finding she is not "disabled" and denying her application for supplemental security income. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). In his Report and Recommendation, Magistrate Judge John M. Bodenhausen concluded there was substantial evidence supporting the Commissioner's findings, and therefore recommended the decision of the Commissioner be affirmed. *See, e.g.*, *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (role of the reviewing court with respect to administrative adjudications by the Commissioner of Social Security is to determine whether the Commissioner's decision was supported by "substantial evidence").

Plaintiff timely filed Objections [ECF No. 28] to the Report and Recommendation.

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *U.S. v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). Thus, the Court conducts a de novo review of the matters raised in Plaintiff's Objections.

## II. DISCUSSION

In her Objections to the Report and Recommendation, Plaintiff argues the Administrative Law Judge (ALJ) failed to follow the treating physician rule and failed to properly determine Plaintiff's Residual Functional Capacity, failed to properly evaluate Plaintiff's credibility, and relied on flawed vocational expert testimony.

The Court's review of the Commissioner's decision is limited to determining whether the decision was supported by "substantial evidence in the record as a whole." *Krogmeier*, 294 F.3d at 1022. In assessing the record as a whole, courts "consider evidence that detracts from the decision, as well as evidence that supports it." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Thus, so long as there is substantial evidence supporting the decision, the reviewing court may not reverse even if there is also substantial evidence that would support a contrary outcome. *Id.*; *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Comissioner] may decide to grant or deny benefits without being subject to reversal on appeal.").

In determining whether an applicant is "disabled" for purposes of the Social Security Act, the Commissioner applies a five-step sequential analysis. Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the Residual Functional Capacity (RFC) to perform her Past Relevant Work (PRW). 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). If the Commissioner determines the claimant cannot return to the PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 416.920(a)(4)(v).

### A. *Dr. Azar Malik and Residual Functional Capacity*

Plaintiff argues the ALJ erred in giving little weight to the opinions of treating psychiatrist Dr. Azfar Malik. Further, Plaintiff asserts the ALJ's determination of RFC was without support of substantial evidence in the record.

#### 1. Dr. Azfar Malik

In his decision, the ALJ considered Dr. Malik's findings and opinions of limitations but gave little evidentiary weight to them. Tr. 35-36. The ALJ discounted Dr. Malik's opinions because of the inconsistencies in his findings. The ALJ noted the inconsistency between Dr. Malik's findings and the Global Assessment of Functioning ("GAF") score Dr. Malik gave to Plaintiff. Plaintiff asserts Dr. Malik's findings are consistent with the treatment records and

psychiatric findings through a mental examination are appropriate diagnostic evidence for mental impairments. Further, Plaintiff argues mental limitations are not required to be in a doctor's treatment notes. Plaintiff claims the ALJ's reliance on Plaintiff's non-compliance with her medication fails to take into account the influence of mental illness on a patient's ability to follow a medication regimen. Lastly, Plaintiff contends the GAF score is consistent with a finding of disability and is consistent with Dr. Malik's findings that Plaintiff has restrictions preventing her from working.

The ALJ did not err in discounting Dr. Malik's findings and opinions. After a careful consideration of Dr. Malik's own findings and records, the ALJ found several inconsistencies which prevented the ALJ from relying on his conclusions. While Plaintiff is correct mental disorders are more difficult to substantiate with objective evidence than a physical ailment, the ALJ did not discount Dr. Malik's findings for a lack of objective evidence to support the findings of mental illness. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th 1989) (citations omitted). The ALJ discounted Dr. Malik's findings because of the inconsistencies within the findings and his own treatment records concerning Plaintiff. An ALJ may disregard the opinion of a treating physician, if the physician "renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). The ALJ's determination Dr. Malik's opinion was unreliable is reasonable as there are several inconsistencies in his findings such as his opinion Plaintiff has a GAF score of 40 but is capable of simple, low stress work. Another example is his finding Plaintiff's mental illness was not stabilized with medication without taking into account Plaintiff's non-compliance with medication or ongoing drug abuse. *See id*. ("A claimant's noncompliance can constitute evidence that is inconsistent with a treating

4

physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight.") (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008).

Plaintiff argues a person's mental illness may contribute to non-compliance with treatment and non-compliance should not be considered a reason for denying someone disability. Plaintiff misreads the conclusion of the ALJ. The ALJ does not deny Plaintiff has a disability because of her failure to take medication. He discounts Dr. Malik's conclusions because Dr. Malik failed to take into account Plaintiff's non-compliance; Dr. Malik makes no attempt to explain why Plaintiff may not be taking her medications nor does he factor into his analysis her limitations or possible mental illnesses. Plaintiff's argument an ALJ must take into account a claimant's mental illness as a possible reason for nocompliance with medication is correct but inapplicable here.

Plaintiff also asserts the ALJ found Dr. Malik's opinions inconsistent with treatment notes because the records did not document mental limitations as described in Dr. Malik's formal report. *See Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for health care personnel – not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record."). Once again, Plaintiff's argument misreads the ALJ's conclusions. The ALJ did not state Dr. Malik failed to document mental limitations in the treatment records. The ALJ found the treatment records do not "document ongoing abnormal mental status examination findings despite compliance with treatment." Tr. 35. The issue on which the ALJ is focusing is whether treatment worked, whether Plaintiff's abnormal mental status examination findings continued with the use of treatment. The issue is not whether mental limitations, which are used to

determine if a claimant has a disability in litigation, were found in the treatment records.[1] The ALJ did note a lack of limitations in Dr. Malik's final report. The ALJ's findings are appropriate; he did not discount Dr. Malik's opinion because of a lack of documentation of mental limitations in treatment records.

Lastly, Plaintiff contends the ALJ's finding of inconsistencies between Plaintiff's GAF score and Dr. Malik's opinions is wrong. Plaintiff reads the ALJ's opinion to state a person with a GAF score of 40 is inconsistent with a finding of disability. However, the ALJ's opinion is the opposite. The ALJ finds an inconsistency between the low GAF score of 40, which indicates serious impairment in social, occupational, or school functioning, and Dr. Malik's opinion Plaintiff can handle simple, low stress work. Substantial evidence supports the ALJ's decision to discredit Dr. Malik's opinion.

### 2. RFC Score

Next, Plaintiff asserts the ALJ's RFC finding is without the support of substantial evidence in the record. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . ." SSR 96-8p, 1996 WL 374184. The ALJ must discuss the claimant's "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . ." *Id*. The ALJ's RFC finding is with the support of substantial evidence in the record and includes detailed findings citing specific medical facts and nonmedical evidence. After an extensive summary of Plaintiff's medical history and analysis of the credibility of each piece of evidence, the ALJ then details his RFC findings more specifically. For example, in concluding

---

[1] Although the Magistrate Judge references the lack of mental limitations in the treatment records, the ALJ focused on the lack of documentation of an abnormal mental status despite treatment.

Plaintiff is limited to a light level of work, the ALJ lists the lack of objective medical findings by treating physicians of significant deficits in strength, neurological function, range of motion, posture, sensation, reflexes, pulses or gait, abilities to squat, stand, walk, sit, lift, carry, bend or stoop; long-term significant atrophy or spasm; required use of a cane or brace; treatment on a regular basis for pain; or reports of significant pain behaviors or abnormal breathing, elevated blood pressure or uncomfortable movement. Tr. 38. The ALJ stated "it is only after giving the claimant the great benefit of the doubt that the undersigned finds the claimant's back and neck impairment severe and limits the claimant to a light level of work." Tr. 38. Each finding in the RFC assessment is supported by a similar explanation. Tr. 37-39. These detailed explanations, combined with the thorough review and consideration of Plaintiff's medical history in the paragraphs immediately preceding the RFC assessment are sufficient to satisfy the standard required in SSR 96-8p.

### B. Ms. Rue's Credibility Determination

Plaintiff's second objection is the ALJ failed to properly evaluate Plaintiff's credibility. Specifically, Plaintiff asserts the ALJ's reference to non-compliance was inappropriate because her noncompliance with treatment can be linked to her mental conditions. Plaintiff also argues there is not a lack of objective testing because there is extensive evidence of mental status abnormalities which is sufficient. Lastly, Plaintiff contends her sporadic work history is due to her psychiatric impairments, not a lack of motivation to work.

In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quoting *Polaski v. Heckler*, 739 F.2d

1320 (8th Cir. 1984)). The ALJ should also consider the absence of objective medical evidence. *Id*. A claimant's credibility is for the Commissioner, not the Court, to decide. *Lewis v. Colvin*, 973 F. Supp. 2d 985, 1002 (E.D.Mo. Sept. 20, 2013) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ found Plaintiff was not credible because of the lack of objective medical findings supporting many of her complaints, her financial motivations, noncompliance with medications, her lack of candor about her drug and alcohol abuse, and her failure to seek medical treatment at various times. *See Gray v. Apfel*, 192 F.3d 799, 803-804 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints based on inconsistencies with the medical evidence, daily activities, statements, and treatment).

The ALJ's credibility determination details a long list of Plaintiff's complaints which are lacking objective medical evidence to support them, including physical and mental complaints. In reference to Plaintiff's mental illness complaints, the ALJ found the medical records do not document psychiatric hospitalization, ongoing treatment with a psychiatrist, psychologist, or counselor, and the medical records do not note any significant abnormalities or deficits with respect to mood, affect, thought processes, concentration, attention, pace, persistence, social interaction, activities of daily living, speech, psychomotor activity, focus, contact with reality, eye contact, orientation, demeanor, abilities to cope with stress, abilities to work without decompensation, abilities to understand and follow instructions, judgment, insight, cognitive function or behavior, lasting twelve months in duration, and despite strict compliance with treatment. Tr. 38-39. Additionally, there is no documentation of Plaintiff's attempts to seek more aggressive treatment. Plaintiff argues there is extensive evidence of mental status abnormalities that is sufficient objective evidence. While there is some evidence of mental status abnormalities, there is no evidence of *significant* mental limitations. Additionally, even without

any evidence, the ALJ still found Plaintiff's mental impairments to be severe and limited her to simple work. *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) ("[A]n ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary.") (internal citations omitted).

Plaintiff also objects to the ALJ's reliance on Plaintiff's noncompliance with treatment in finding her not credible. Plaintiff asserts the ALJ should have considered the effect of her mental illness on complying with treatment. The ALJ should take into consideration whether a person's mental illness is causing the noncompliance with treatment. *See Pates-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009) (". . . non-compliance with medications can be and usually is, the result of the mental impairment itself . . ."). However, even the reports from medical experts, including Dr. Malik's, do not connect Plaintiff's noncompliance with any mental illness. While the ALJ should not have so easily discounted Plaintiff's noncompliance, the determination of credibility is well-supported by other facts in the record, such as Plaintiff's financial motivations for benefits.

Plaintiff has filed for disability benefits seven times from 1989 to the present. She has a poor work history and inconsistent earnings. Plaintiff stated she stopped taking her medications because her insurance was cut off but there is no evidence she attempted to secure any services offered to indigents for treatment. *See Ramirez v. Barnhart*, 292 F.3d 576, 581-82 (8th Cir. 2002) (poor prior work record and financial motivation, along with other factors, may contribute to an adverse credibility determination). Additional evidence of Plaintiff's motivations include a suspicious prescription note stating Plaintiff cannot work due to her bipolar illness and other medical issues dated August 17, 2011, signed by Dr. Malik when Plaintiff's treatment with Dr. Malik did not begin until November 11, 2011. Plaintiff also had an interview with a DDS

9

interviewer in which she claimed extreme pain and an inability to sit down but managed to sit through the 72 minute interview without standing up. The ALJ conducted a thorough *Polaski* analysis of Plaintiff's credibility and the credibility determination is supported by substantial evidence on the record as a whole. *See Ramirez*, 292 F.3d at 581-82.

### C. *Vocational Expert Testimony*

Plaintiff's final objection is the ALJ presented a hypothetical question to the vocational expert which did not include all of Plaintiff's restrictions. Plaintiff asserts the question did not include evidence from Dr. Malik, nor did the question account for the ALJ's finding Plaintiff has moderate difficulties in concentration, persistence or pace. A hypothetical question posed to a vocational expert is required to include only those impairments accepted as true by the ALJ. *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001). The ALJ had discredited Dr. Malik's findings because of inconsistencies in the record; thus, the ALJ was not required to include those findings in the hypothetical posed to the vocational expert.

The purpose of a hypothetical question is to clearly present to the vocational expert, a set of limitations mirroring those of Plaintiff. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). The ALJ does not have to use specific diagnostic or symptomatic terms if other descriptive terms can define the impairments. *Id*. The ALJ found Plaintiff has moderate difficulties with concentration, persistence, or pace.[2] Tr. 32. These were not included in the hypothetical

---

[2] The Magistrate Judge was correct that the ALJ did not find the medical treatment notes documented any observations of significant abnormalities or deficits with respect to concentration, pace, or persistence. However, the ALJ did find moderate difficulties in concentration, persistence, or pace, which is required to be included in the hypothetical. *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (remanding the decision back to the ALJ for failure to include in the hypothetical question moderate difficulties in pace, persistence, or concentration).

question posed to the vocational expert, nor were any other descriptive terms used. The ALJ posed the hypothetical as:

> "The claimant's medical record and testimony suggest that she's functionally limited to light exertional work. She should avoid ropes, ladders, and scaffolding. She can occasionally do stooping, crouching, and crawling. She should avoid fumes, odors, dusts, and gasses. And she is limited to unskilled work."

This hypothetical is not sufficient and cannot constitute substantial evidence to support a finding of no disability because it does not include all of Plaintiff's limitations found by the ALJ. *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (finding a hypothetical which does not mention deficiencies in concentration, persistence, or pace, cannot constitute substantial evidence to support the decision.). Any hypothetical question on remand should include Plaintiff's deficiencies of concentration, persistence, or pace.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying Plaintiff's claim for supplemental security income is **REVERSED**, and the case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order.

Dated this 30th Day of June, 2015.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE